# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# LEWIS T. BABCOCK, JUDGE

Civil Case No. 04-cv-00023-LTB

THOMAS MINK,

      Plaintiff,

v.

SUSAN KNOX, a Deputy District Attorney working for the 19th Judicial District Attorney's Office, in her individual capacity,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Babcock, J.

    This civil rights case is before me on Defendant, Susan Knox's, Renewed Motion to Dismiss [**Docket # 70**], Plaintiff, Thomas Mink's, Response in Opposition [**Docket # 73**], and Defendant Knox's Reply [**Docket # 77**]. Oral arguments would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, I GRANT Defendant Knox's Renewed Motion to Dismiss [**Docket # 70**] and DISMISS this case.

## I.  BACKGROUND

    Plaintiff Thomas Mink ("Plaintiff")—while a student at the University of Northern Colorado ("UNC")—created and published an internet-based journal called *The Howling Pig*. Several issues of the journal included a column published by Plaintiff under the pseudonym "Junius Puke," an apparent reference to actual UNC professor Junius Peake ("Peake" or "Professor Peake"). Peake was parodied in the column and, not amused, contacted the Greeley

police who commenced an investigation for potential violations of Colorado's criminal libel statute, COLO. REV. STAT. § 18-13-105. The police, in conjunction with the District Attorney's office, sought a search warrant. In December 2003, Defendant Knox—a deputy district attorney—reviewed and approved the search warrant affidavit, which was then presented to and approved by a magistrate judge. Greeley police executed the warrant at Plaintiff's residence, seizing his personal computer and other written materials.

Plaintiff filed the present action on January 8, 2004. The First Amended and Supplemental Complaint [**Docket # 13**] alleged four claims for relief: a facial challenge to the constitutionality of the Colorado criminal libel statute ("Claim One"); a claim that Knox violated the Privacy Protection Act, 42 U.S.C. § 2000aa, *et seq*. ("Claim Two"); a claim that Knox—by reviewing and approving the affidavit submitted in support of the search warrant—violated Plaintiff's right to be free from unreasonable searches and seizures ("Claim Three"); and a claim that Knox violated the Electronic Communications Privacy Act, 18 U.S.C. § 2701, *et seq*. ("Claim Four"). On October 26, 2004, I issued an Order dismissing all four claims and dismissing the case [**Docket # 47**]. As to Claim One, I held Plaintiff lacked standing because no charges had been brought and prosecutors stated they did not intend to prosecute in the future. As to Claim Two, I held Plaintiff failed to allege any action on behalf of Knox that could be construed to violate the Privacy Protection Act. As to Claim Three, I held Knox was entitled to absolute immunity from suit because she was she was acting in a quasi-judicial capacity and within her role as an advocate before a judicial tribunal. As to Claim Four, I held Plaintiff failed to allege any action on behalf of Knox that could be construed to violate the Electronic Communications Privacy Act.

Plaintiff appealed as to the first three claims. The Tenth Circuit affirmed on Claims One and Two, but reversed and remanded on Claim Three. *See Mink v. Suthers*, 482 F.3d 1244 (10th Cir. 2007). The Tenth Circuit noted "a prosecutor is entitled to absolute immunity for those actions that cast him in the role of an advocate initiating and presenting the government's case. Absolute immunity, however, does not extend to those actions that are investigative or administrative in nature, including the provision of legal advice outside the setting of a prosecution." *Id*. at 1261–62 (citing *Burns v. Reed*, 500 U.S. 478, 486, 493–94 (1991); *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)). Applying this rule to the facts at bar, the court held that Knox "was not wearing the hat of an advocate" when she reviewed and approved the affidavit submitted in support of the search warrant. *Id*. at 1262. The court noted the Government was "far from filing charges" at the time Knox reviewed the affidavit, and Knox was therefore not yet preparing for a judicial proceeding, but was merely assisting the Government in investigating Plaintiff and obtaining evidence against him. *Id*. Accordingly, Knox "acted to guide the police, not to prepare [her] own case." *Id*. at 1263.

The court concluded it was error to dismiss Count Three on the ground that it was barred by the doctrine of absolute immunity, but held Knox "may be entitled to qualified immunity if she reasonably concluded probable cause existed to support the warrant application, or that the application of the Supreme Court's First Amendment cases to the criminal libel statute was not clearly established under the circumstances" of this case. *Id*. The court declined to address the qualified immunity issue in the first instance and remanded.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Granting a motion to dismiss is a harsh remedy which must be exercised with caution to protect the liberal rules of pleading and the interests of justice. *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989). Nonetheless, a claim "may be dismissed either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim." *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).

When considering a motion to dismiss, a district court must accept as true all factual allegations in the complaint. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). While the factual allegations need not be pleaded in great detail, they must be sufficiently precise to raise a right to relief above the speculative level. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65, 1969 (2007) (abrogating the rule of *Conley v. Gibson*, 355 U.S. 41, 44–45 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

A district court should dismiss the complaint if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, *supra*, 127 S. Ct. at 1974; *see also Kay*, *supra*, 500 F.3d at 1218. "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)

(quoting *Twombly*, 127 S. Ct. at 1974). "Plausibility," however, does not refer to the likelihood that the allegations can be proven or even that the allegations are true. *Robbins*, 519 F.3d at 1247.

The determination of whether a complaint contains enough allegations of fact to state a claim to relief that is plausible on its face is dependent on the context of the claim raised. *See Robbins*, *supra*, 519 F.3d at 1248; *Kelley v. New York Like Ins. & Annuity Corp.*, No. 07-cv-01702-LTB-BNB, 2008 WL 1782647, at *3 (D. Colo. Apr. 17, 2008). The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). Accordingly, within the context of the claim alleged, the complaint must contain enough specific allegations of fact to show that if all the alleged facts—and only the alleged facts—are believed to be true, the plaintiff has a claim for relief. *See Twombly*, *supra*, 127 S. Ct. at 1965; *Robbins*, 519 F.3d at 1247–48.

### B. Qualified Immunity

The context of this case is a claim of qualified immunity by a state official who was sued for damages in her individual capacity. The doctrine of qualified immunity shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. *Elder v. Holloway*, 510 U.S. 510, 512 (1994). I initially consider the threshold question of whether—taken in the light most favorable to Plaintiff as the party asserting the injury—Plaintiff alleges sufficient facts to show Knox's conduct violated Plaintiff's constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

If the answer to the first question is yes, I then ask if the right was clearly established within a sufficiently analogous factual setting. *Saucier*, *supra*, 533 U.S. at 201; *Medina v. City and County of Denver*, 960 F.2d 1493, 1497 (10th Cir. 1992). This determination must also be made within the specific context of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 201. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina*, 960 F.2d at 1498. This does not mean the prior case law must have precisely the same facts, however, but rather requires a particularized inquiry to determine whether the contours of the right were sufficiently defined by prior case law such that "a reasonable official would understand what he is doing violates that right." *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

If both inquiries can be met in the affirmative, then the defendant is not entitled to qualified immunity. *See Saucier*, *supra*, 533 U.S. at 201. For purposes of a motion to dismiss based on qualified immunity, therefore, Plaintiff must allege sufficient facts to show that Plaintiff plausibly, not just speculatively, meets both inquiries. *See Robbins*, *supra*, 519 F.3d at 1247. Therefore, in § 1983 claims such as this one, a plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom* . . . as distinguished from collective allegations against the state." *Id*. at 1249–50 (emphasis in original). Mere conclusory allegations are insufficient. *See id*.

## III.  ANALYSIS

The only claim remaining in this case is Claim Three: a claim that Knox—by reviewing and approving the affidavit submitted in support of the search warrant—violated Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment.  Plaintiff alleges that Knox reviewed and approved the search warrant without having probable cause to believe a crime had been committed, and reviewed and approved an affidavit submitted in support of the search warrant that was facially deficient in that it failed to particularize the place to be searched and the things to be seized.  I address each contention in turn.

### A.  Probable Cause

Plaintiff alleges Knox reviewed and approved the affidavit submitted in support of the search warrant without having probable cause to believe a crime had been committed.  It is axiomatic that a search warrant may not be issued unless the government "has reason to believe that a specific crime has been or is being committed."  *See Berger v. State of New York*, 388 U.S. 41, 59 (1967).  Thus, Plaintiff adequately meets the first prong of the qualified immunity inquiry.  *See Saucier*, *supra*, 533 U.S. at 201.

As noted by the Tenth Circuit in remanding for determination of this issue in the first instance, Knox "may be entitled to qualified immunity if she reasonably concluded probable cause existed to support the warrant application, or that the application of the Supreme Court's First Amendment cases to the criminal libel statute was not clearly established under the circumstances" of this case.  *See Mink v. Suthers*, *supra*, 482 F.3d at 1263.  As the existence of qualified immunity now turns on whether a reasonable official in Knox's position would

understand that the Supreme Court's First Amendment cases applied to foreclose the application of the Colorado libel statute in this case, I address this inquiry first.

   1. *Whether the application of the Supreme Court's First Amendment cases to the Colorado criminal libel statute was clearly established under the circumstances of this case*

The second prong of the qualified immunity inquiry requires a particularized inquiry into the specific context of the case to show whether a reasonable official would know her conduct violated a clearly established right. *See Anderson*, *supra*, 483 U.S. at 640. The alleged "specific crime" supporting the warrant here was the Colorado criminal libel state, COLO. REV. STAT. § 18-13-105. In this case, therefore, I inquire whether a reasonable official would have reason to believe Plaintiff's actions in publishing *The Howling Pig* violated the Colorado libel statute. The inquiry necessarily involves an analysis of the contours of the statute.

COLO. REV. STAT. § 18-13-105 makes it a class 6 felony to "knowingly publish or disseminate, either by written instrument, sign, pictures, or the like, any statement or object tending to . . . impeach the honesty, integrity, virtue, or reputation or expose the natural defects of one who is alive, and thereby to expose him to public hatred, contempt, or ridicule." The scope of the Colorado criminal libel statute is limited by the First Amendment. *See generally Colorado v. Ryan*, 806 P.2d 935 (Colo. 1991) (discussing cases).

"It is speech on matters of public concern that is at the heart of the First Amendment's protection." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985) (internal quotations and citations omitted). A defamatory false statement about a public official or public figure on a matter of public concern, therefore, is not actionable for damages or criminal sanction unless it is made with "actual malice"—that is, when the declarant knows the defamatory

statement to be false or acts in reckless disregard for its truth.  *See Garrison v. Louisiana*, 379 U.S. 64, 67 (1964); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 278–80 (1964); *Ryan*, *supra*, 806 P.2d at 940.

"In contrast, speech on matters of purely private concern is of less First Amendment concern." *Dun & Bradstreet*, *supra*, 472 U.S. at 759.  When a defendant publishes defamatory statements that do not involve a public figure and a matter of public concern, therefore, the imposition of liability for such private defamation "does not abridge the freedom of public speech or any other freedom protected by the First Amendment." *See N.Y. Times Co. v. Sullivan*, *supra*, 376 U.S. at 301–02.  "Thus, [COLO. REV. STAT.] section 18-13-105 can be applied constitutionally to private defamers who 'knowingly publish or disseminate . . . any statement or object tending . . . to impeach the honesty, integrity, virtue, or reputation of a private individual," even when no showing of actual malice is made.  *Ryan*, *supra*, 806 P.2d at 939.

The First Amendment also protects ostensibly libelous statements when such statements amount to "no more than rhetorical hyperbole," or when such statements amount to opinion, satire, or parody that could not reasonably be interpreted as making a factual statement.  *See Hustler Magazine v. Falwell*, 485 U.S. 46, 50 (1988); *Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*, 398 U.S. 6, 13–14 (1970); *Pring v. Penthouse Int'l, Ltd.*, 695 F.2d 438, 441–43 (10th Cir. 1982).

      a.  The "public figure, matter of public concern" exception

For purposes of this qualified immunity analysis, Plaintiff must show—on the facts alleged in the complaint—a reasonable official in Knox's position would have known the statements in *The Howling Pig* did not violate the Colorado libel statute.  Plaintiff, therefore, must

9

show that a reasonable official in Knox's position would know—in light of then-existing law—that Professor Peake was a public figure and that the allegedly defamatory statements in *The Howling Pig* addressed a matter of public concern and were not made with actual malice. Plaintiff does not meet his burden.

A person is a "public figure" when he "achieve[s] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts," or when he "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Whether a statement addresses a matter of public concern must be determined by examining the statement's content, form, and context as revealed by the whole record. *See Dun & Bradstreet*, *supra*, 472 U.S. at 761.

Plaintiff alleges the following facts in support of his theory that Knox should have known the Supreme Court's First Amendment cases foreclosed the application of the Colorado criminal libel statute in this case: (1) *The Howling Pig* featured satirical and sarcastic commentary about matters of public concern; (2) *The Howling Pig*'s purported editor-in-chief is "Mr. Junius Puke," an obvious parody of UNC's Monfort Distinguished Professor of Finance, Mr. Junius Peake; (3) the editorial column attributed to "Professor Puke" spoofs and parodies Professor Peake by addressing subjects on which the real professor would be unlikely to write; (4) Professor Peake is well-known in the Weld County and the University of Northern Colorado communities; (5) Professor Peake was a public figure in the community as a result of his published editorial opinions in the Greeley Tribune; and (6) a reasonable prosecutor would have known, or upon

reasonable investigation could have discovered, that Professor Peake was a public official or a public figure.

Plaintiff alleges that Professor Peake was an economics professor who often voiced his views publicly on a wide range of issues by means of e-mails to faculty and students and editorial opinions in the Greeley Tribune. Plaintiff does not allege Professor Peake occupied a position having "persuasive power and influence" or "pervasive fame or notoriety." *See Gertz*, *supra*, 418 U.S. at 351; *Walters v. Linhof*, 559 F. Supp. 1231, 1235 (D. Colo. 1983). Thus, on the facts alleged, Plaintiff does not show Professor Peake to be a "public figure for all purposes and in all contexts." *See Gertz*, 418 U.S. at 351–52 ("Petitioner has long been active in community and professional affairs. He has served as an officer of local civic groups and of various professional organizations, and he has published several books and articles on legal subjects. Although petitioner was consequently well known in some circles, he had achieved no general fame or notoriety in the community. . . . We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life."); *see also Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1292 (D.C. Cir. 1980) ("This test is a strict one.").

Professor Peake may be considered a public figure in regards to a specific public controversy. In making such a determination, it is necessary to isolate the controversy, examine Peake's involvement in the controversy, and then determine whether the alleged defamation was germane to his participation in the controversy. *See Gertz*, *supra*, 418 U.S. at 352; *Waldbaum*,

11

*supra*, 627 F.2d at 1297–98; *Quigley v. Rosenthal*, 43 F. Supp. 2d 1163, 1176 (D. Colo. 1999). The three-part analysis is applied "through the eyes of a reasonable person [looking] at the facts taken as a whole." *Waldbaum*, 627 F.2d at 1292.

For purposes of my qualified immunity analysis, however, the question is not whether Professor Peake was a public figure in regards to a specific controversy, but rather whether—on the facts alleged in the complaint—a reasonable official in Knox's position would have known Professor Peake was a public figure in regards to the specific defamatory statements allegedly made in *The Howling Pig*. Peake reported that statements in *The Howling Pig* brought him embarrassment and exposed him to public hatred, contempt, and ridicule, and impeached his honesty, integrity, virtue, and reputation within the community. The only specific defamatory statements alleged in the affidavit are that *The Howling Pig* used a picture of Peake and identified him as Editor-in-Chief "Junius Puke," that Peake gambled in tech stocks in the 1990s, and that Peake rode the tech bubble "like a $20 whore" and made a fortune. Plaintiff does not allege a reasonable official in Knox's position would have known Peake was a public figure in regards to a public controversy about the 1990s tech bubble. Thus, Plaintiff does not allege a reasonable official in Knox's position would have known Peake was a public figure on the limited range of issues raised by the allegedly defamatory statements. *See Dun & Bradstreet*, *supra*, 472 U.S. at 761.

Even if Plaintiff had alleged Knox would know Peake was a public figure, Plaintiff has not alleged a reasonable official in Knox's position would understand Plaintiff's allegedly defamatory statements in *The Howling Pig*—statements implicating Peake's involvement in tech stocks—involved a matter of public concern. *See Dun & Bradstreet*, 472 U.S. at 761–62

12

(holding, "in light of the reduced constitutional value of speech involving no matters of public concern," a state libel charge was proper). Likewise, Plaintiff has not alleged a reasonable official in Knox's position would have known Plaintiff lacked "actual malice" when he made the allegedly defamatory statements. *See id.* Accordingly, Plaintiff has not alleged sufficient facts to plausibly—not just speculatively—show a reasonable official in Knox's position would understand Plaintiff's statements regarding Professor Peake in *The Howling Pig* were "public figure, matter of public concern" statements protected by the First Amendment and therefore could not violate the Colorado libel statute. *See Anderson*, *supra*, 483 U.S. at 640; *N.Y. Times v. Sullivan*, *supra*, 376 U.S. at 301–02; *Robbins*, *supra*, 519 F.3d at 1247; *Ryan*, *supra*, 806 P.2d at 939.

### b. The "opinion, parody, and hyperbole" exception

The Supreme Court makes clear that the First Amendment protects even speech that is "patently offensive and is intended to inflict emotional injury," when that speech "could not reasonably have been interpreted as stating actual facts about the public figure involved." *See Hustler Magazine v. Falwell*, *supra*, 485 U.S. at 50, 57. I note initially that the question of whether this "opinion, parody, and hyperbole" exception extends to statements about private figures on matters of private concern does not appear to be resolved in this circuit. *See Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1144 (10th Cir. 2000). As Plaintiff failed to adequately allege a reasonable official in Knox's position should have know Peake was a public figure or that the statements regarded a matter of public concern, it would likewise follow that Plaintiff failed to adequately allege a reasonable official in Knox's position would have

13

known the "opinion, parody, and hyperbole" exception protected Plaintiff's speech from prosecution under the Colorado libel statute.

Even if the "opinion, parody, and hyperbole" exception could apply to the facts of this case—because Peake was a public figure and the statements in *The Howling Pig* regarded a matter of public concern—for purposes of this qualified immunity inquiry, the question is whether a reasonable official in Knox's position would have known the exception applied. In other words, do the facts alleged in the complaint demonstrate a reasonable official in Knox's position would have known that the statements in *The Howling Pig* were not "capable of being defamatory" because they could not "reasonably be interpreted as stating actual facts about an individual?" *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Schwartz v. Am. Coll. of Emergency*, 215 F.3d 1140, 1145 (10th Cir. 2000); *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 988 F. Supp. 1341, 1345 (D. Colo. 1997). "In making this inquiry, relevant considerations include the phrasing of the statement, the context in which it appears, the medium through which it is disseminated, the circumstances surrounding its publication, and a determination of whether the statement implies the existence of undisclosed facts which support it." *Jefferson County Sch. Dist.*, 988 F. Supp. at 1345. While an analysis of these factors does suggest the statements in *The Howling Pig* <u>might</u> be entitled to constitutional protection under the "opinion, parody, and hyperbole" exception, it does not necessarily follow that such a conclusion would have been obvious to Knox at the time she approved and submitted the affidavit in support of the search warrant.

The "opinion" exception to the Colorado libel statute is simply another way of ensuring statements that do not include facts are protected under the often-cited "marketplace of ideas"

concept described by Justice Holmes in his dissent in *Abrams v. United States*, 250 U.S. 616 (1919). *See Milkovich*, *supra*, 497 U.S. at 18. Thus, as noted by the Tenth Circuit in *Schwartz*, "expressions of opinion [that] implicitly contain an assertion of objective fact . . . are not exempt from a defamation claim." *Schwartz*, *supra*, 215 F.3d at 1145. *The Howling Pig* contains many such implied assertions including that Peake attained his position through "hard work, luck, and connections all without a college degree," that Peake occupied a "cushy, do-nothing, ornamental position" "paid through an endowment from one of [Peake's] business partners," and the previously mentioned references to Peake's involvement in 1990s tech stocks. All of these statements imply at least some measure of factual basis, and as such are not the type of "pure opinion" that is invariably protected by the First Amendment. *See id*. at 1145 (discussing cases).

When determining whether a statement can reasonably be interpreted as a factual assertion or merely hyperbole or parody, I examine the totality of the circumstances in which the statement was made. *See TMJ Implants, Inc. v. Aetna, Inc.*, 405 F. Supp. 2d 1242, 1250 (D. Colo. 2005); *Wilson v. Meyer*, 126 P.3d 276, 279 (Colo. Ct. App. 2005). Plaintiff claims the website was an obvious parody and could not reasonably be interpreted as stating facts about Peake. Although I found as much when I granted Plaintiff a temporary restraining order on January 4, 2004, protecting him from further prosecution and requiring the return of his computer, the question here is whether such a conclusion would have been obvious to a reasonable official in Knox's position.

Plaintiff points me to no authority—other than my own passing view at the January 4, 2004, hearing—that clearly establishes the statements in *The Howling Pig* were hyperbole, parody, or satire conclusively protected by the First Amendment. Knox could not fairly have

15

been expected to prophecy how I would rule at the January 4, 2004, hearing as my views were necessarily based upon an examination of all the facts gathered up to that time. In undertaking a qualified immunity analysis, however, the Supreme Court specifically instructs me to proceed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Accordingly, Plaintiff does not show, in light of pre-existing law, that it would be apparent to a reasonable official in Knox's position that a search warrant would be unlawful under the circumstances of this case. *See Anderson*, *supra*, 483 U.S. at 640 ("in light of the pre-existing law the unlawfulness must be apparent").

*2. Whether under the extant legal landscape Knox reasonably concluded probable cause existed to support the warrant application*

Having determined that a reasonable official in Knox's position could believe that the statements in *The Howling Pig* were not protected statements under the First Amendment—and, accordingly, that Plaintiff's actions in publishing such statements could subject him to criminal prosecution under the Colorado libel statute—I now turn to whether a reasonable official in Knox's position could conclude probable cause existed to support the warrant application. "[A]n application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally." *New York v. P.J. Video, Inc.*, 475 U.S. 868, 875 (1986). Thus, "probable cause" in such cases means only that there was a fair probability that contraband or evidence of a crime would be found in the particular place specified. *See id.* at 876 (citations omitted).

16

In order to show it was unreasonable for an official in Knox's position to conclude probable cause existed to support the warrant application in this case, Plaintiff must point to specific facts and law showing—under the totality of the circumstances set forth in the affidavit—it would have been unreasonable to conclude contraband or evidence of a crime would be found in Plaintiff's home. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986). Aside from his arguments regarding the First Amendment discussed above, Plaintiff does not attempt to make such a showing. Accordingly, Plaintiff fails to meet his burden to plausibly—not just speculatively—show that a lack of probable cause for the search warrant in this case was clearly established. *See Robbins*, *supra*, 519 F.3d at 1247

### B. Particularity

"The Fourth Amendment requires that a search warrant describe things with sufficient particularity to prevent a general exploratory rummaging in a person's belongings." *United States v. Carey*, 172 F.3d 1268, 1272 (10th Cir. 1999) (citing *Marron v. United States*, 275 U.S. 192, 196 (1927)). "The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985). Thus, it is well established that a warrant is facially invalid when it "fail[s] to particularize the place to be searched or the things to be seized," and reliance on such a facially invalid warrant is not objectively reasonable. *See United States v. Leon*, 468 U.S. 897, 923 (1984).

"[T]he constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain." *Stanford v. Texas*, 379 U.S. 476, 511–12 (1965). Under the "scrupulous" standard required by the Supreme Court, I have no doubt the warrant in this case was overly broad. The warrant authorized the seizure—among other things—of "any and all correspondence, diaries, memoirs, journals, personal reminiscences, electronic mail (e-mail), letters, notes, memorandum, or other communications in written or printed form" without regard to whether these materials were related to the suspected crime. The language in this warrant is even more broad than that in *Stanford*—language the Supreme Court described as "constitutionally intolerable." *Stanford*, 379 U.S. at 486; *see also Voss*, *supra*, 774 F.2d at 405–06 ("The warrants' overbreadth is made even more egregious by the fact that the search at issue implicated free speech and association rights. . . . Even if the allegedly fraudulent activity constitutes a large portion, or even the bulk, of the NCBA's activities, there is no justification for seizing records and documents relating to its legitimate activities.").

Plaintiff does not, however, allege that Knox issued the warrant, nor that she reviewed the warrant, nor that she participated in the search and seizure executed pursuant to the warrant. The question here, therefore, is whether—taken in the light most favorable to Plaintiff—the complaint alleges sufficient facts to show Knox—solely by reviewing and approving the affidavit submitted in support of the search warrant—violated Plaintiff's constitutional rights. This requires a threshold analysis of whether Plaintiff alleges a violation of his constitutional rights at all. *See Saucier*, *supra*, 533 U.S. at 201. While the case law regarding the unconstitutionality of affidavits that contain false information and material omissions is considerable—*see*, *e.g.*, *Franks*

*v. Delaware*, 438 U.S. 154 (1978)—Plaintiff points me to no case law supporting his theory here—namely, that submission of an affidavit lacking particularity as to the items believed to constitute evidence of a crime violates the Fourth Amendment. In fact, the Supreme Court indicates the opposite is true. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004). "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents" or in "the papers presented to the judicial officer asked to issue the warrant." *Id*. (quoting *United States v. Stefonek*, 179 F.3d 1030, 1033 (7th Cir. 1999)); *see also United States v. Hurwitz*, 459 F.3d 463, 470 (4th Cir. 2006) ("Significantly, the particularity requirement applies to the warrant, as opposed to the application or the supporting affidavit submitted by the applicant."). Accordingly, as to the particularity issue, Plaintiff has not alleged his constitutional rights have been violated by Knox and a grant of qualified immunity is appropriate without further inquiry.

## IV. CONCLUSION

Defendant Knox's Renewed Motion to Dismiss [**Docket # 70**] is GRANTED. No remaining claims pending against any other Defendant, this case is DISMISSED. Defendant is awarded costs.

Dated: June   12  , 2008.

                                                BY THE COURT:

                                                   s/Lewis T. Babcock
                                                Lewis T. Babcock, Judge