IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 04-cv-00023-LTB-CBS

THOMAS MINK,

    Plaintiff,

v.

SUSAN KNOX, a Deputy District Attorney Working for the 19th Judicial District Attorney's Office, in her individual capacity,

    Defendant.
_____

ORDER
_____

This case is before me on Plaintiff Thomas Mink's Motion for Summary Judgment [Doc # 112] and Defendant Susan Knox's Motion for Summary Judgment [Doc # 113]. Both motions are directed to the single remaining claim in this case - Mr. Mink's §1983 claim for violation of his Fourth Amendment right to be free from unreasonable searches and seizures. For the reasons set forth below, I grant Mr. Mink's motion for summary judgment and deny Ms. Knox's motion for summary judgment.

**I. Background**

This action arises out of Mr. Mink's publication of an internet-based newsletter, *The Howling Pig,("THP"),* which addressed matters of interest to the community of the University of Northern Colorado ("UNC") where Mr. Mink was a student. *THP*'s editor-in-chief was identified as "Mr. Junius Puke," who was pictured via altered photographs of Junius Peake, a UNC professor. Prompted by complaints from Mr. Peake, the Greeley police searched the home

where Mr. Mink lived with his mother and seized the personal computer that they shared pursuant to a search warrant and search warrant affidavit that had been reviewed and approved by Ms. Knox.

Ms. Knox initially succeeded in having Mr. Mink's § 1983 claim for damages against her dismissed on the basis of absolute prosecutorial immunity. On appeal, however, the Tenth Circuit held that Ms. Knox was not entitled to absolute prosecutorial immunity and remanded the case for consideration of Ms. Knox's claim for qualified immunity. *See Mink v. Suthers,* 482 F.3d 1244 (10th Cir. 2007). On remand, I granted Ms. Knox's renewed motion to dismiss based on qualified immunity. On appeal, the Tenth Circuit concluded that Mr. Mink had plausibly alleged that Ms. Knox violated his clearly established constitutional rights and reversed the dismissal of Mr. Mink's § 1983 claim alleging an unlawful search and seizure in violation of the Fourth Amendment on the basis of qualified immunity. *See Mink v. Suthers,* 613 F.3d 995 (10th Cir. 2010) (*"Mink II"*). Mr. Mink now seeks summary judgment that Ms. Knox is liable on his § 1983 claim while Ms. Knox seeks summary judgment that she is entitled to qualified immunity on this claim.

## II. Statement of Undisputed Facts

The following facts are undisputed for purposes of the pending summary judgment motions unless otherwise noted.

On November 14, 2008, Mr. Peake reported to Detective Kevin Warren of the Greeley Police Department that he believed he was the victim of criminal libel based on the publication of *THP*. Under Colorado law, a person commits criminal libel if they "knowingly publish or disseminate, either by written instrument, sign, pictures, or the like, any statement or object

tending to ... impeach the honesty, integrity, virtue, or reputation or expose the natural defect of one who is alive, and thereby to expose him to public hatred, contempt, or ridicule." C.R.S. § 18-13-105(1).

Detective Warren went to *THP's* website and found several issues of the newsletter posted there. The main page of *THP's* website and the newsletters posted there featured a picture of Mr. Peake taken from UNC's website which was altered to include sunglasses, a small nose, and a small moustache, and identified as "Junius Puke." Issues of *THP* contained notes from the editor "Junius Puke," which were signed "Jay."

Mr. Peake reported that many of the statements found on *THP's* website were false and defamatory to his character, brought him embarrassment and exposed him to public hatred, contempt, and ridicule, and impeached his honesty, integrity, virtue, and reputation within the community. As examples of criminally libelous conduct associated with the *THP* website and newsletters, Mr. Peake identified (1) the website's use of his photograph identified as editor-in-chief Junius Puke; (2) a statement on the website that he "gambled in tech stocks" in the 90s; (3) a statement on the website that Junius Puke wore glasses to avoid being recognized by his colleagues on Wall Street where "he managed to luck out and ride the tech bubble of the nineties like a $20 whore and make a fortune;" and (4) the website's inclusion of opinions and articles about UNC, the Greeley community, and Northern Colorado that Mr. Peake felt were attributable to him.

Detective Warren printed out a version of the *THP* web page that contained a disclaimer that " [*THP*] would like to make sure that there is no possible confusion between our editor Junius Puke and the Monfort Dstinguished Professor of Finance, Mr. Junius "Jay" Peake." Mr.

Peake advised Detective Warren that the disclaimer was not present at the time he printed a copy of the web page. The disclaimer was also not present on at least some copies of the *THP* newsletter that were being distributed around the UNC campus.

On December 12, 2003, after linking Mr. Mink to the *THP* website through various records, Detective Warren executed an Affidavit for Search Warrant Under Rule 16 (the "Affidavit") and corresponding search warrant (the "Warrant"), requesting authorization to search certain property at Mr. Mink's home. The Affidavit does not state that Mr. Peake was UNC's Monfort Distinguished Professor of Finance; that the editorial column attributed to "Junius Puke" contained subjects and views Mr. Peake would be unlikely to address or espouse; or that Mr. Peake was well known in the UNC and Greeley communities as someone who often voiced his views publicly on a wide range of issues. Attached to the Affidavit and referenced therein, however, was the *THP* web page printed out by Detective Warren that identifies Mr. Peake as UNC's Monfort Distinguished Professor of Finance and contains the actual editorials attributed to "Junius Puke."

The District Attorney's Office in the Nineteenth Judicial District had a practice of having its attorneys review affidavits and warrants for searches drafted by police officers for their legal sufficiency and support for probable cause before submission to a judge. In December of 2003, Detective Warren approached the District Attorney's Office to request review of the Affidavit and Warrant. As a Chief Deputy District Attorney for the Nineteenth Judicial District at the time, Ms. Knox reviewed the documents and found them appropriate for submission to a judge.

Ms. Knox's asserts that her review of the Affidavit and Warrant was "limited to the four corners of the documents." Because it was attached to and referenced in the Affidavit, Mr. Mink

asserts that Ms. Knox necessarily reviewed the *THP* web page and newsletters printed out by Detective Warren and that this information should have factored into her review.  In any event, it is undisputed that Ms. Knox had no personal knowledge of any of the facts contained in the Affidavit and was not involved in any way in Detective Warren's investigation of Mr. Peake's complaint.  Prior to reviewing the Affidavit and Warrant, Ms. Knox had never heard of Mr. Peake, and the only information she had about him was what was contained in the documents Detective Warren provided to her.  Ms. Knox had no knowledge of Mr. Peake's political or personal views or topics that he would be likely to address.

On December 12, 2003, after it had been approved by a judge, Detective Warren executed the Warrant and seized the computer from Mr. Mink's home.  Ms. Knox was not present for the execution of the Warrant.  At the time of the execution of the Warrant, Detective Warren asked Mr. Mink why he added the disclaimer about the distinction between Junius Puke and Junius Peake to his website.  Mr. Mink responded that he had received an e-mail at the address associated with the website from someone believing that the website was actually created by Mr. Peake. The writer of the e-mail was "irate" with Mr. Peake for creating the website. As a result, Mr. Mink decided to add the disclaimer to reduce any confusion or association between Mr. Peake and the website.

## II.  Standard of Review

The very purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson Liberty Lobby, Inc.*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

## III.  Analysis

### A.  Ms. Knox's Claim of Qualified Immunity

Qualified immunity shields governmental officials performing discretionary functions from liability for civil damages provided that their conduct does not violate clearly established constitutional rights.  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Once a defendant asserts the defense of qualified immunity, the plaintiff must establish that (1) the defendant's actions violated a constitutional or statutory right; and (2) the law was clearly established such that a reasonable person in the defendant's position would have known that their conduct violated the law.  *Garrett v. Stratman,* 254 F.3d 946, 951 (10th Cir. 2001).  Although it is often beneficial to analyze these two factors sequentially, I have discretion to analyze these factors in the order I find most appropriate.  *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 818 (2009).  Under the circumstances of this case, I proceed with the sequential analysis of the two prongs of a qualified immunity defense.

#### 1.  Violation of Mr. Mink's Constitutional Rights

Three conditions must be met for searches and seizures pursuant to a warrant to be constitutional under the Fourth Amendment:

> First, warrants must be issued by neutral, disinterested magistrates.  Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense.  Finally, warrants must particularly describe the things to be seized, as well as the place to be searched.

*Mink II,* 613 F.3d at 1003 (*quoting Dalia v. United States,* 441 U.S. 238, 255 (1979)).  Here, Mr. Mink argues that the Search Warrant lacked both probable cause and particularity.

### a. Probable Cause

"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Mink II, supra* (*quoting Brinegar v. United States,* 338 U.S. 160, 175 (1949)). "Probable cause exists if facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* (Internal quotations and citations omitted). Thus, the Tenth Circuit stated in *Mink II* that "[t]he question therefore becomes whether a government official of reasonable caution, having reviewed the [A]ffidavit and the editorial column of [*THP*], would believe that this publication was libelous." *Id.*

The Tenth Circuit proceeded to analyze whether Mr.Mink's speech that was the subject of the Affidavit was protected by the First Amendment. *Id.* at 1004. The focus of this analysis was whether a reasonable person would conclude that the statements in *THP* were actual statements of fact about Mr. Peake, or attributable to him, rather than a satirical spoof. *Id.* at 1008. After reviewing the content of *THP's* editorial page, the Tenth Circuit concluded that "no reasonable reader would believe that the statements in that context were said by Professor Peake in the guise of Junius Puke, nor would any reasonable person believe that they were statements of fact as opposed to hyperbole or parody." *Id.* at 1009. The Tenth Circuit further concluded that no reasonable prosecutor could therefore believe that it was probable that publishing such statements constituted a crime warranting the search and seizure of Mr. Mink's property. *Id.* at 1010.

Ms. Knox argues that the Tenth Circuit's analysis in *Mink II* is not dispositive in this case because the Tenth Circuit did not have the benefit of additional undisputed facts set forth in her motion for summary judgment. Ms. Knox first emphasizes that there is no evidence that she actually reviewed the *THP* web page and newsletters that were printed out by Detective Warren and referenced in and attached to the Affidavit. Given the ambiguity on this issue in the declaration provided by Ms. Knox, this argument seems disingenuous. Furthermore, the defense of qualified immunity would be extended beyond all reason if a prosecutor could avoid liability for an unconstitutional search and seizure by not reviewing the supporting documents. In any event, as noted by the Tenth Circuit in *Mink II,* the Affidavit itself states:

> The picture [of Junius Peake] has been altered to include sunglasses, a smaller nose and a small moustache similar to that of Hitler's. The person in the photograph is identified on the website as Junius Puke. The picture is accompanied by a biography of Mr. Puke. According to the site, its purpose is to draw attention to issues rampant in Northern Colorado and Elsewhere.

This description should have alerted Ms. Knox to the fact that *THP* might constitute satire protected by the First Amendment and that she should review the actual content of the website as set forth in the attachment even if she was otherwise inexplicably not inclined to do so.

Alternatively, Ms. Knox argues that even if she reviewed the *THP* web page, mere knowledge that Mr. Peake was a professor of finance would not have alerted her to any particular views he had or the likelihood that he would express certain views. This argument must fail in light of the Tenth Circuit's analysis in *Mink II.* Specifically, the Tenth Circuit reviewed the editorials in *THP* and concluded that "Junius Puke covered subjects and used language that Mr. Peake, a professor of finance, surely would not have." *Id.* at 1008. There were other characteristics of the *THP* web page and newsletters attached to the Affidavit that should have

9

alerted Ms. Knox to the fact that the statements there might constitute satire protected by the First Amendment including but not limited to the disclaimer to make sure there was no confusion between Junius Puke and Mr. Peake. Although this disclaimer may not have always been on *THP's* web page, it was undisputedly on the copy provided to Ms. Knox by Detective Warren.

Finally, Ms. Knox argues that evidence that a single person thought Mr. Peake was responsible for THP and that Mr. Mink added the disclaimer to prevent such confusion renders the Tenth Circuit's analysis in *Mink II* non-binding. I disagree. As articulated by the Tenth Circuit, the test is not how any particular individual would characterize *THP's* editorial column but how a reasonable person would understand its content in context. *Mink II, supra,* 613 F.3d at 1009. Thus, the mere fact that a single person misinterpreted *THP* prompting Mr. Mink to add the disclaimer does not warrant rejection of the Tenth Circuit's conclusion that no reasonable person would believe that the statements in the editorials were said by Professor Peake in the guise of Junius Puke or that they were statements of fact as opposed to hyperbole or parody.

Accordingly, Mr. Mink has established that Ms. Knox's alleged conduct violated his Fourth Amendment rights because there was no probable cause to believe that he had committed criminal libel. Ms. Knox's argument that she is nonetheless entitled to qualified immunity because she made a reasonable mistake that her actions were constitutional is directly contradicted by the Tenth Circuit's conclusion, unaffected by the additional facts she presents, that no reasonable prosecutor could have believed that it was probable that publication of *THP* statements constituted a crime warranting the search and seizure of Mr. Mink's property.

### b. Particularity

The Tenth Circuit's holding in *Mink II* that Mr. Mink had plausibly alleged that Ms. Knox violated his constitutional right not to be served with a warrant lacking particularity was predicated on the fact that the Warrant made no reference to any particular crime. *Id.* at 1010-11. Ms. Knox argues that this holding fails to take into account the Affidavit which specifically references the criminal libel statute. An affidavit may be used to cure a search warrant's lack of particularity if the affidavit is attached to the warrant and incorporated by reference into the warrant. *United States v. Medlin,* 798 F.2d 407, 410 n. 1 (10th Cir. 1986). Although the Warrant states that Detective had filed the Affidavit, Ms. Knox has not presented sufficient evidence to establish that the Affidavit was attached to the Warrant. Ms. Knox therefore cannot rely on the Affidavit to circumvent the Tenth Circuit's holding that the Warrant lacked particularity in its entirety.

It follows that Ms. Knox's argument that there was no violation of Mr. Mink's constitutional rights because none of his property was seized pursuant to a single paragraph in the Warrant referenced in my June 12, 2008 dismissal order is without merit. I further note that in addressing the Warrant's compliance with the constitutional requirement of particularity, I concluded that it was overly broad because it authorized the seizure **"-** ***among other things-*** of 'any and all correspondence, ... or other communications in written or printed form.'" *See* Doc # 79 (emphasis added). Thus, Ms. Knox's sole focus on that specific paragraph in the Warrant is misplaced in any event.

### 2. Clearly Established Law

In *Mink II,* the Tenth Circuit concluded that "[t]he prong of the qualified immunity test requiring that the law be clearly established is easily satisfied here." *Id.* at 1011. The Tenth Circuit elaborated that:

> Ms. Knox's review of the [A]ffidavit and [W]arrant occurred in December 2003. Long before that, it was clearly established in this circuit that speech, such as parody and rhetorical hyperbole, which cannot reasonably be taken as stating actual fact, enjoys the full protection of the First Amendment and therefore cannot constitute the crime of criminal libel for purposes of a probable cause determination. Moreover, it was also clearly established that warrants must contain probable cause that a specified crime has occurred and meet the particularity requirement of the Fourth Amendment in order to be constitutionally valid.

*Id.* (citations omitted).

For the reasons set forth above, I have already concluded that the additional facts and arguments presented by Ms. Knox in support of her motion for summary judgment do not warrant a departure from the Tenth Circuit's analysis in *Mink II* of the first prong of the qualified immunity test. I likewise conclude that these additional facts and arguments do not warrant a departure from the Tenth Circuit's analysis in *Mink II* of the second prong of the qualified immunity test.

Because Mr. Mink has met his burden of demonstrating that Ms. Knox's conduct violated his clearly established constitutional rights, Ms. Knox is not entitled to qualified immunity.

### B. Mr. Mink's motion for Summary Judgment

Ms. Knox's defense of Mr. Mink's motion for summary judgment is predicated on the same additional facts and arguments set forth in her motion for summary judgment. Viewing the

facts in the light most favorable to her does not alter my conclusion based primarily on *Mink II* that Ms. Knox violated Mr. Mink's Fourth Amendment right to be free from unreasonable searches and seizures. Mr. Mink is therefore entitled to judgment as a matter of law on the issue of Ms. Knox's liability on his § 1983 claim with damages to be determined in subsequent proceedings.

### IV.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.  Plaintiff Thomas Mink's Motion for Summary Judgment [Doc # 112] is GRANTED;

2.  Defendant Susan Knox's Motion for Summary Judgment [Doc # 113] is DENIED; and

3.  Judgment shall enter in favor of Mr. Mink on the issue of Ms. Knox's liability on his § 1983 claim for violation of his Fourth Amendment right to be free from unreasonable searches and seizures with damages to be determined in subsequent proceedings.


Dated: June   3  , 2011 in Denver, Colorado.

                                        BY THE COURT:

                                        　s/Lewis T. Babcock                    
                                        LEWIS T. BABCOCK, JUDGE